Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE FINGER, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DISCOVERY, INC., ROBERT R. BECK, ROBERT L. JOHNSON, J. DAVID WARGO, ROBERT J. MIRON, STEVEN A. MIRON, SUSAN M. SWAIN, PAUL A. GOULD, KENNETH W. LOWE, DANIEL E. SANCHEZ, ROBERT R. BENNETT, JOHN C. MALONE, and DAVID M. ZASLAV, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Katherine Finger ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to

- 1 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Discovery, Inc. ("Discovery" or the "Company") and the members of Discovery's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which : (i) Discovery will be merged with the WarnerMedia segment (the "WarnerMedia Business") of AT&T Inc. ("AT&T") through AT&T's subsidiary Magallanes, Inc. ("Spinco") and Discovery's subsidiary Drake Subsidiary, Inc. ("Merger Sub") and (ii) the combined company will be renamed Warner Bros. Discovery, Inc. ("WBD") (the "Proposed Transaction").

2. On May 17, 2021, Discovery and AT&T issued a joint press release announcing that they had entered into a series of definitive transaction agreements, including an Agreement and Plan of Merger dated May 17, 2021 (the "Merger Agreement") and a Separation and Distribution Agreement, dated May 17, 2021 (the "Separation Agreement"), pursuant to which AT&T will separate and transfer WarnerMedia Business to Spinco, which will continue as a wholly owned subsidiary

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of WBD.  Under the terms of the agreements, existing shareholders of Discovery will own approximately 29% of the outstanding shares of WBD on a fully diluted basis.

3. On November 18, 2021, Discovery filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Discovery stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for Discovery and the WarnerMedia Business after giving effect to the Proposed Transaction ("WarnerMedia"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Allen & Company LLC ("Allen & Company") and J.P. Morgan Securities LLC ("J.P. Morgan" and together with Allen & Company, the "Financial Advisors").  Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Discovery's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates corporate offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Discovery.

9. Defendant Discovery is a Delaware corporation, with its principal executive offices located at 8403 Colesville Road, Silver Spring, Maryland 20910, and corporate offices located in Los Angeles, California. The Company is a global leader in real life entertainment, serving an audience around the world with content that inspires, informs and entertains. Discovery's Series A, Series B, and Series C common stock trade on

- 4 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the Nasdaq Global Select Market under the ticker symbols "DISCA," "DISCB," and "DISCK," respectively.

10.     Defendant Robert R. Beck ("Beck") has been a director of the Company since 2008.

11.     Defendant Robert L. Johnson ("Johnson") has been a director of the Company since January 1, 2021.

12.     Defendant J. David Wargo ("Wargo") has been a director of the Company since 2008.

13.     Defendant Robert J. Miron ("Robert Miron") has been Board Chair since 2014, and a director of the Company since 2008.

14.     Defendant Steven A. Miron ("Steven Miron") has been a director of the Company since 2008.

15.     Defendant Susan M. Swain ("Swain") has been a director of the Company since 2016.

16.     Defendant Paul A. Gould ("Gould") has been a director of the Company since 2008.

17.     Defendant Kenneth W. Lowe ("Lowe") has been a director of the Company since 2018.

18.     Defendant Daniel E. Sanchez ("Sanchez") has been a director of the Company since 2017.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

19.     Defendant Robert R. Bennett ("Bennett") has been a director of the Company since 2008.  Defendant Bennett previously served as President of Discovery Holding Company ("Discovery Holding") from 2005 until 2008 when it merged with Discovery.

20.     Defendant John C. Malone ("Malone") has been a director of the Company since 2008.  Defendant Malone served as Chief Executive Officer ("CEO") and Chairman of the board of directors of Discovery Holding from 2005 to 2008, when it merged with Discovery.

21.     Defendant David M. Zaslav ("Zaslav") has been President and CEO of the Company since 2007, and a director since 2008.

22.     Defendants identified in paragraphs 10-21 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23.     AT&T is a Delaware corporation with its principal executive offices located at 208 S. Akard Street, Dallas, Texas, 75202.  It was formed in 1983 (formerly, SBC Communications Inc.) as one of several regional holding companies created to hold AT&T Corp.'s ("ATTC") local telephone companies.  Following its formation, AT&T has expanded its footprint and operations by acquiring various businesses.  With approximately 180,000 employees worldwide (excluding employees of WarnerMedia Business) as of October 1, 2021, AT&T is a leading provider of telecommunications,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

media and technology services globally. AT&T's common shares trade on the New York Stock Exchange under the ticker symbol "T."

24. Spinco is a Delaware corporation and a wholly owned subsidiary of AT&T.

25. Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of Discovery.

## **SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

26. Discovery is a global media company that provides content across multiple distribution platforms, including linear platforms such as pay-television ("pay-TV"), free-to-air and broadcast television, authenticated GO applications, digital distribution arrangements, content licensing arrangements and next generation direct-to-consumer ("DTC") subscription products, including discovery+, the definitive real-life subscription service. As one of the world's largest pay-TV programmers, as of December 31, 2020, Discovery provided original and purchased content and live events to approximately 3.7 billion cumulative subscribers and viewers worldwide through networks that it wholly or partially owns. Discovery distributes customized content in the United States and over 220 other countries and territories in nearly 50 languages. Discovery has an extensive library of content and owns most rights to its content and footage, which enables Discovery to leverage its library to quickly launch brands and services into new markets and on new platforms. Discovery's content can be re-edited

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

and updated in a cost-effective manner to provide topical versions of subject matter that can be utilized around the world on a variety of platforms.

27.    The Company's content spans genres including survival, natural history, exploration, sports, general entertainment, home, food, travel, heroes, adventure, crime and investigation, health, and kids.  Discovery's global portfolio of networks includes prominent nonfiction television brands such as Discovery Channel, the Company's most widely distributed global brand, HGTV, Food Network, TLC, Animal Planet, Investigation Discovery, Travel Channel, Science, and MotorTrend (previously known as Velocity domestically and currently known as Turbo in most international countries).  Among other networks in the U.S., Discovery also features two Spanish-language services, Discovery en Español and Discovery Familia.   Discovery's international portfolio also includes Eurosport, a leading sports entertainment provider and broadcaster of the Olympic Games (the "Olympics") across Europe (excluding Russia), TVN, a Polish media company, as well as Discovery Kids, a leading children's entertainment brand in Latin America.  The Company participates in joint ventures including Magnolia, the recently formed multi-platform venture with Chip and Joanna Gaines, and Group Nine Media, a digital media holding company home to top digital brands including NowThis News, the Dodo, Thrillist, PopSugar, and Seeker.

28.    Discovery operates in two reportable segments: U.S. Networks, consisting principally of domestic television networks and digital content services, and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

International Networks, consisting primarily of international television networks and digital content services.

29.     On November 3, 2021, Discovery announced its third quarter 2021 ("Q3 2021") financial results.  Total revenues of $3,150 million a 23% increase as compared to $2,561 million in the prior year quarter.  International advertising revenues and distribution revenues increased 28% and 7%, respectively, from the year ago quarter. The Company ended Q3 2021 with 20 million DTC Subscribers, an increase of 3 million subscribers since the end of second quarter 2021.  Total U.S. Networks revenues increased 12% to $1,858 million compared to $1,659 million in the prior year quarter.  Distribution revenue increased 21% primarily driven by discovery+ and increases in contractual affiliate rates.  Total International Networks revenues increased 44% to $1,295 million, compared to $902 million the in prior year quarter.  Reflecting on the Company's results, defendant Zaslav stated:

> We made great strides in the quarter operationally, financially and creatively.  The team drove solid momentum in our direct-to-consumer business, which we grew to 20 million paid subscribers at quarter end on the strength of our global brands and fan-favorite content, including the Summer Olympic Games and Shark Week.  Additionally, we delivered double-digit growth in both advertising and distribution revenues, as we doubled next generation revenues year over year.  This strong performance once again drove very healthy cash flows during the quarter,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

further strengthening our balance sheet and financial profile.  We are very excited about our pending merger with WarnerMedia and the opportunity to bring these two companies together, combining iconic and globally cherished franchises and brands, and positioning us to more efficiently drive global scale across the combined portfolio.

**The Proposed Transaction**

30.    On May 18, 2021, Discovery and AT&T issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

DALLAS and NEW YORK, May 17, 2021 -- AT&T Inc. (NYSE:T) and Discovery, Inc. (NASDAQ: DISCA, DISCB, DISCK) today announced a definitive agreement to combine WarnerMedia's premium entertainment, sports and news assets with Discovery's leading nonfiction and international entertainment and sports businesses to create a premier, standalone global entertainment company.

Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, AT&T would receive $43 billion (subject to adjustment) in a combination of cash, debt securities, and WarnerMedia's retention of certain debt, and AT&T's shareholders would receive stock representing 71% of the new company; Discovery

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

shareholders would own 29% of the new company. The Boards of Directors of both AT&T and Discovery have approved the transaction.

The companies expect the transaction will create substantial value for AT&T and Discovery shareholders by:

- Bringing together the strongest leadership teams, content creators, and high-quality series and film libraries in the media business.

- Accelerating both companies' plans for leading direct-to-consumer (DTC) streaming services for global consumers.

- Uniting complementary and diverse content strengths with broad appeal — WarnerMedia's robust studios and portfolio of iconic scripted entertainment, animation, news and sports with Discovery's global leadership in unscripted and international entertainment and sports.

- Forming a new company that will have significant scale and investment resources with projected 2023 Revenue of approximately $52 billion, adjusted EBITDA of approximately $14 billion, and an industry leading Free Cash Flow conversion rate of approximately 60%.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Creating at least $3 billion in expected cost synergies annually for the new company to increase its investment in content and digital innovation, and to scale its global DTC business.

For AT&T and its shareholders, this transaction provides an opportunity to unlock value in its media assets and to better position the media business to take advantage of the attractive DTC trends in the industry. Additionally, the transaction allows the company to better capitalize on the longer-term demand for connectivity:

- AT&T shareholders participate in a leading media company with a broad global portfolio of brands, tremendous DTC potential and strengthened combined assets.

- Creates substantial value opportunity for AT&T shareholders through stepped-up investment in growth areas – mobile and fixed broadband.

- Capital structure improvement after closing will position AT&T as one of the best capitalized 5G and fiber broadband companies in the United States.

- Results in two independent companies – one broadband connectivity and the other media – to sharpen the investment focus and attract the best investor base for each company.

- 12 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**A Stronger Competitor in Global Streaming**

The new company will compete globally in the fast-growing direct-to-consumer business -- bringing compelling content to DTC subscribers across its portfolio, including HBO Max and the recently launched discovery+.  The transaction will combine WarnerMedia's storied content library of popular and valuable IP with Discovery's global footprint, trove of local-language content and deep regional expertise across more than 200 countries and territories.  The new company will be able to invest in more original content for its streaming services, enhance the programming options across its global linear pay TV and broadcast channels, and offer more innovative video experiences and consumer choices.

**Uniting Dynamic, Enduring and Historic Brands and Franchises**

The "pure play" content company will own one of the deepest libraries in the world with nearly 200,000 hours of iconic programming and will bring together over 100 of the most cherished, popular and trusted brands in the world under one global portfolio, including: HBO, Warner Bros., Discovery, DC Comics, CNN, Cartoon Network, HGTV, Food Network, the Turner Networks, TNT, TBS, Eurosport, Magnolia, TLC, Animal Planet, ID and many more.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The new company will be able to increase investment and capabilities in original content and programming; create more opportunity for under-represented storytellers and independent creators; serve customers with innovative video experiences and points of engagement; and propel more investment in high-quality, family-friendly nonfiction content.

**Leadership, Governance and Structure**

The companies announced that Discovery President and CEO David Zaslav will lead the proposed new company with a best-in-class management team and top operational and creative leadership from both companies.

Discovery's current multiple classes of shares will be consolidated to a single class with one vote per share.

The new company's Board of Directors will consist of 13 members, 7 initially appointed by AT&T, including the chairperson of the board; Discovery will initially appoint 6 members, including CEO David Zaslav.

**Executive Commentary**

**John Stankey Said:**

- 14 -

"This agreement unites two entertainment leaders with complementary content strengths and positions the new company to be one of the leading global direct-to-consumer streaming platforms.  It will support the fantastic growth and international launch of HBO Max with Discovery's global footprint and create efficiencies which can be re-invested in producing more great content to give consumers what they want.  For AT&T shareholders, this is an opportunity to unlock value and be one of the best capitalized broadband companies, focused on investing in 5G and fiber to meet substantial, long-term demand for connectivity.  AT&T shareholders will retain their stake in our leading communications company that comes with an attractive dividend.  Plus, they will get a stake in the new company, a global media leader that can build one of the top streaming platforms in the world."

**David Zaslav Said:**

"During my many conversations with John, we always come back to the same simple and powerful strategic principle:  these assets are better and more valuable together.  It is super exciting to combine such historic brands, world class journalism and iconic franchises under one roof and unlock so much value and opportunity.  With a library of cherished IP, dynamite management teams and global expertise in every market in the

- 15 -

world, we believe everyone wins...consumers with more diverse choices, talent and storytellers with more resources and compelling pathways to larger audiences, and shareholders with a globally scaled growth company committed to a strong balance sheet that is better positioned to compete with the world's largest streamers.  We will build a new chapter together with the creative and talented WarnerMedia team and these incredible assets built on a nearly 100-year legacy of the most wonderful storytelling in the world.  That will be our singular mission: to focus on telling the most amazing stories and have a ton of fun doing it."

**Transaction Highlights**

The combination will be executed through a Reverse Morris Trust, under which WarnerMedia will be spun or split off to AT&T's shareholders via dividend or through an exchange offer or a combination of both and simultaneously combined with Discovery.  The transaction is expected to be tax-free to AT&T and AT&T's shareholders.

In connection with the spin-off or split-off of WarnerMedia, AT&T will receive $43 billion (subject to adjustment) in a combination of cash, debt securities and WarnerMedia's retention of certain debt.  The new company expects to maintain investment grade rating and utilize the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

significant cash flow of the combined company to rapidly de-lever to approximately 3.0x within 24 months, and to target a new, longer term gross leverage target of 2.5x-3.0x.   WarnerMedia has secured fully committed financing from JPMorgan Chase Bank, N.A. and affiliates of Goldman Sachs & Co. LLC for the purposes of funding the distribution.

The transaction is anticipated to close in mid-2022, subject to approval by Discovery shareholders and customary closing conditions, including receipt of regulatory approvals.   No vote is required by AT&T shareholders.   Agreements are in place with Dr. John Malone and Advance to vote in favor of the transaction.

**AT&T Preliminary Financial Profile Following Completion of the Transaction; Focused Total Return Strategy for Capital Allocation; After Close, Dividend Payout Ratio1 Expected to be Low 40s%.**

After close and on a pro-forma basis, AT&T expects its remaining assets to produce the following financial trajectory from 2022 to 2024:

- Annual revenue growth: low single digits CAGR2

- Annual adjusted EBITDA3 and adjusted EPS4 growth: mid-single digits CAGR

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Significantly increased financial flexibility to drive returns to shareholders, including:

- Expected increased capital investment for incremental investments in 5G and fiber broadband.  The company expects annual capital expenditures of around $24 billion once the transaction closes.  AT&T expects its 5G C-band network will cover 200 million people in the U.S. by year-end 2023.  And the company plans to expand its fiber footprint to cover 30 million customer locations by year-end 2025.

- Significant debt reduction: Expect Net Debt to Adjusted EBITDA5 in the 2.6x range after transaction closes and less than 2.5x by year end 2023.

- Attractive dividend – resized to account for the distribution of WarnerMedia to AT&T shareholders.  After close and subject to AT&T Board approval, AT&T expects an annual dividend payout ratio of 40% to 43% on anticipated free cash flow1 of $20 billion plus.

- The optionality to repurchase shares once Net Debt to Adjusted EBITDA is less than 2.5x.

**Advisors**

- 18 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

LionTree LLC and Goldman Sachs & Co. LLC served as financial advisors and Sullivan & Cromwell LLP served as legal advisor to AT&T.

Allen & Company LLC and J.P. Morgan Securities LLC served as financial advisors and Debevoise & Plimpton LLP served as legal advisor to Discovery.  Perella Weinberg Partners and Wachtell Lipton, Rosen & Katz served as advisors to the Independent Directors of Discovery.

RBC Capital Markets served as financial advisors and Paul, Weiss, Rifkind, Wharton & Garrison LLP served as legal advisors to Advance.

**<u>Insiders' Interests in the Proposed Transaction</u>**

31.    Discovery insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Discovery.

32.    Notably, certain Discovery insiders have secured positions for themselves with the surviving corporation following the merger.  For example, under the terms of the Merger Agreement, six Discovery designees will be appointed to serve on the board of the combined company following completion of the merger, including defendants Zaslav, Malone, and Steven Miron.  In fact, defendant Zaslav has entered into an

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

amended and restated employment agreement on May 16, 2021 (the "Zaslav Employment Agreement"), pursuant to which (i) he will serve as President and CEO of WBD with an annual salary of $3 million and a target annual bonus of $22.0 million, and (ii) he was granted 14,733,712 Discovery options under Discovery's 2013 Stock Incentive Plan.

33.     In addition, if they are terminated in connection with the Proposed Transaction, Company insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash Severance ($)[1] | Equity ($)[2] | Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| David M. Zaslav | $ 48,838,562 | $7,017,503 | $ 28,835 | $55,429,900 |
| Gunnar Wiedenfels | $ 6,658,333 | $4,174,429 | $ 241,369 | $11,074,131 |
| Bruce L. Campbell | $ 4,840,496 | $5,221,290 | $ 41,815 | $10,103,602 |
| David C. Leavy | $ 3,277,747 | $1,938,615 | $ 40,470 | $ 5,256,831 |
| Jean-Briac Perrette | $ 5,358,268 | $6,498,781 | $ 174,642 | $12,031,691 |

**The Registration Statement Contains Material Misstatements or Omissions**

34.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Discovery's stockholders.   The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

35.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for Discovery and WarnerMedia; and (ii) the data and inputs underlying the financial valuation analyses

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

that support the fairness opinions provided by the Company's financial advisors, Allen & Company and J.P. Morgan.

***Material Omissions Concerning the Financial Projections for Discovery and WarnerMedia***

36.     The Registration Statement omits material information regarding the financial projections for Discovery and WarnerMedia.

37.     For example, in connection with performing their *Selected Public Companies Analyses*, the Registration Statement sets forth that:

> Discovery's financial advisors performed a sum-of-the-parts analysis of Discovery based on financial forecasts and estimates of Discovery management, including (1) Discovery's traditional business (excluding non-recurring amounts related to the Olympics), to which Discovery's financial advisors applied a selected range of calendar year 2022 estimated EBITDA multiples of 6.5x to 7.5x, (2) Discovery's DTC business, to which Discovery's financial advisors applied a selected range of calendar year 2024 revenue multiples of 4.0x to 5.0x, and (3) Discovery's corporate segment, to which Discovery's financial advisors applied a selected calendar year 2022 estimated EBITDA multiple of 6.0x.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Registration Statement at 199.  Yet, the Registration Statement fails to disclose the projections for each of the Company's traditional business, DTC business, and corporate segment.

38.   Similarly,

Discovery's financial advisors performed a sum-of-the-parts analysis of WarnerMedia based on financial forecasts and estimates of AT&T management as adjusted per the management of Discovery, including (1) WarnerMedia's traditional business, to which Discovery's financial advisors applied a selected range of calendar year 2022 estimated EBITDA multiples of 8.0x to 10.0x, (2) WarnerMedia's DTC business (represented by WarnerMedia's HBO segment), to which Discovery's financial advisors applied a selected range of calendar year 2024 revenue multiples of 4.0x to 5.0x, and (3) WarnerMedia's corporate segment, including amounts attributable to Otter Media Holdings and eliminations of intercompany transactions within WarnerMedia, to which Discovery's financial advisors applied a selected calendar year 2022 estimated EBITDA multiple of 6.0x.

*Id.* at 200.  Yet, the Registration Statement fails to disclose the financial forecasts for WarnerMedia's traditional business, DTC business, and corporate segment.

39.   Moreover,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Discovery's financial advisors also conducted a sum-of-the-parts selected public companies analysis of WarnerMedia based on financial forecasts and estimates of AT&T management as adjusted per the management of Discovery relating to individual segments of WarnerMedia (considered by J.P. Morgan for informational reference only and not considered part of the material financial analyses for its opinion), including WarnerMedia's (1) traditional linear segment relating to general entertainment and sports, to which Discovery's financial advisors applied a selected range of calendar year 2022 estimated EBITDA multiples of 6.0x to 7.0x, (2) traditional linear segment relating to news and digital sports, to which Discovery's financial advisors applied a selected range of calendar year 2022 estimated EBITDA multiples of 9.0x to 10.0x, (3) studio segment, to which Discovery's financial advisors applied a selected range of calendar year 2022 estimated EBITDA multiples of 12.0x to 13.0x, (4) DTC business (represented by WarnerMedia's HBO segment), to which Discovery's financial advisors applied a selected range of calendar year 2024 estimated revenue multiples of 4.0x to 5.0x, and (5) corporate segment, including amounts attributable to Otter Media Holdings and eliminations of intercompany transactions within WarnerMedia, to which Discovery's financial advisors applied a selected calendar year 2022 estimated EBITDA multiple of 6.0x.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Id.*   The Registration Statement, however, fails to disclose the forecasts of the individual segments of WarnerMedia, including WarnerMedia's (i) traditional linear segment relating to general entertainment and sports; (ii) traditional linear segment relating to news and digital sports; (iii) studio segment; (iv) DTC business; and (v) corporate segment.

40.   Moreover, the Registration Statement fails to disclose all line items underlying each of Discovery's and WarnerMedia's (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

41.   The omission of this material information renders the statements in the "Discovery Forecasts" and "Opinions of Discovery's Financial Advisors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning J.P. Morgan's and Allen & Company's Financial Analyses**

42.   The Registration Statement omits material information regarding the Financial Advisors' financial analyses.

43.   The Registration Statement describes the Financial Advisors' fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of the Financial Advisors' fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Discovery's public stockholders are unable to fully

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

understand these analyses and, thus, are unable to determine what weight, if any, to place on the Financial Advisors' fairness opinions in determining whether to vote in favor of the Proposed Transaction.

44.     With respect to the Financial Advisors' *Selected Public Companies Analysis* of Discovery and WarnerMedia, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed by the Financial Advisors in the analyses.

45.     With respect to Allen & Company's *Discounted Cash Flow Analysis* of Discovery, the Registration Statement fails to disclose: (i) Discovery's terminal year estimate of unlevered, after-tax free cash flows; (ii) quantification of the implied terminal values for the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.00% to 7.25%.

46.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Discovery, the Registration Statement fails to disclose: (i) Discovery's terminal year estimate of unlevered, after-tax free cash flows; (ii) quantification of the implied terminal values for the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.00% to 7.00%.

47.     With respect to Allen & Company's *Discounted Cash Flow Analysis* of WarnerMedia, the Registration Statement fails to disclose: (i) WarnerMedia's terminal year estimate of unlevered, after-tax free cash flows; (ii) quantification of the implied

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

terminal values for WarnerMedia; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.00% to 7.25%.

48.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of WarnerMedia, the Registration Statement fails to disclose: (i) WarnerMedia's terminal year estimate of unlevered, after-tax free cash flows; (ii) quantification of the implied terminal values for WarnerMedia; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 6.00% to 7.00%.

49.     With respect to the Financial Advisors' stock price targets analysis, the Registration Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

50.     The omission of this material information renders the statements in the "Opinions of Discovery's Financial Advisors" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

51.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.   Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Discovery will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Discovery's and WarnerMedia's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Allen & Company and J.P. Morgan.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

55.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.    Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.    Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

58.    Plaintiff repeats all previous allegations as if set forth in full.

59.    The Individual Defendants acted as controlling persons of Discovery within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Discovery, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

62.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Discovery's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Discovery, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Discovery stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 20, 2021

**WEISSLAW LLP**

Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348
                      -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS